## Dobson *against* Racey and others.

Where a mortgagor, being about to leave the country, gives to his mortgagee a power of attorney, authorizing him to sell the mortgaged premises and convey them in fee, and after discharging the mortgage to pay the surplus over, the relation of principal and agent is created, and the mortgagee becomes incapable of acquiring the title under his power, without the mortgagor's consent.

In such case, with the mortgagor's consent, he may acquire the title by a conveyance through a third party.

The widow of a mortgagee acquiring such a title, who, after his death, has occupied the mortgaged premises, after releasing her right of dower, was held a competent witness for the heirs of the mortgagee, in an action brought against them by the mortgagor's heirs to redeem. Her interest, if any, is in favor of the redemption.

In July, 1817, James Dobson and wife executed to Charles Racey a mortgage upon lands in Richmond county, as collateral security for the payment of $1,500 to Racey, for which Dobson gave his bond. Dobson, on the 7th of October following, being in feeble health, executed to Racey a power of attorney, authorizing him to sell and convey in fee the mortgaged premises for such consideration as he might think proper, and after paying the principal and interest of the mortgage to pay one half the net surplus to his (Dobson's) wife. Immediately after executing the power of attorney, Dobson went to Georgia, where he died in the spring of 1818. From Darien in Georgia he wrote a letter to Racey, saying he should never return, and expressing a wish that the title to the mortgaged premises might be vested in Racey, in any way General Bogardus should advise, to save the expenses of a foreclosure. On the 19th of November, 1817, Racey, by virtue of the power, conveyed the premises by deed, in which Mrs. Dobson united, to one Harrison, for $100, subject to the mortgage. Two days afterwards Harrison, for the same consideration, conveyed to Charles Racey. Both conveyances were designed

Dobson *against* Racey.

to perfect a title in Racey, who paid to Mrs. Dobson the $100 expressed as the consideration of the deed to Harrison. That deed was drawn and witnessed by General Bogardus, who, as a subscribing witness, proved the execution of it to the master in chancery, before whom it was acknowledged by Mrs. Dobson. The amount due on the mortgage was equal to the full value of the mortgaged premises. Soon after the conveyances Racey wrote a letter to Dobson, informing him of the transaction, and received an answer approving of it. In November, 1818, Mr. Racey took possession of the property, and occupied it until his death in 1826, since which time it has been occupied by the defendants, his widow and children.

This suit was commenced in January, 1844, by bill filed in the court of chancery by Mary A. Dobson, only child and heir at law of James Dobson, deceased, against Mrs. Racey, to obtain a discovery as to the title, and to redeem the mortgaged premises. The complainant was born in April, 1818, after the death of her father. Mrs. Racey answered the bill, and the cause was brought to a hearing before the assistant vice chancellor, when it was ordered to stand over, with leave to bring in the heirs of Charles Racey as parties. A supplemental bill was filed for that purpose. After the exhibiting of that bill, and before the answer of the heirs was filed, Mrs. Racey released and conveyed all her interest in the premises to those heirs. Mrs. Racey was examined as a witness on behalf of the other defendants, and her testimony furnished the only evidence of the payment of the hundred dollars to Mrs. Dobson, as the consideration for the deed to Harrison, and of the correspondence between Racey and Dobson in relation to the conveyances. Objection was made to her testimony by the complainant's counsel on the ground that she was interested in the event of the suit. The mother of the complainant, the widow of James Dobson, who had subsequently intermarried with one Marks, and had become a second time a widow, was also examined as a witness on the part

SEL. IV.—28

of the complainant. There was much contradiction in the statements of these witnesses. Under the constitution of 1846 the supreme court became possessed of the cause, and the same was heard upon pleadings and proofs, by William Kent, referee, appointed by that court to hear and report upon the whole cause.

The referee decided that Mrs. Racey was a competent witness for the other defendants, and reported that Charles Racey acquired a good and sufficient title to the premises in fee simple, by the deed from Harrison: that the complainant had no right to redeem the same, and that a decree should be entered dismissing the bill without costs to either party. The report was confirmed at a special term by Edmonds, J., and a decree made accordingly. On rehearing at the general term the decree was affirmed, and the plaintiff appealed to this court.

*T. W. Tucker* for appellant.

*N. Hill, jr.*, for respondents.

The opinion of the court was delivered by

Ruggles, Ch. J. It is very satisfactorily shown that the land in controversy, during the year 1817, and for several years afterwards, was not worth any more than the money for which it was mortgaged to Charles Racey. Indeed, the evidence shows it to have been worth less than that amount. There is no room, therefore, for believing that Racey intended to get the land for less than it was worth, by conveying it to Harrison and receiving his reconveyance. A foreclosure and sale at auction would probably have left Racey with an uncollectable balance due on his bond, and a bill of costs to pay. This may account for the course taken by Racey to acquire the equity of redemption, without imputing to him any intention to cheat Dobson.

But the relation of principal and agent existing between Dobson and Racey, rendered Racey incapable of acquiring

the title in that way, without the consent of Dobson. But with Dobson's assent and direction the transaction was honest in itself and valid in law. Dobson himself, if he had lived, could not have been allowed to redeem, after having directed and approved of the conveyance to Harrison and the reconveyance from him. The complainant claiming under him, whatever would have cut off his right of redemption if he had lived, affects her as it would have affected him.

If Mrs. Racey is a competent and credible witness, the complainant must fail. Her testimony shows that the arrangement for vesting the title in Charles Racey was made by his direction, and received his subsequent consent and approbation.

I concur with the referee in the court below in the opinion that she was competent.

Before she was examined she had released her right of dower to the heirs of her deceased husband, so that she had no remaining interest in the land. But the complainant's counsel insists that she is responsible to the complainant for the rents and profits since her husband's death, as an intruder and wrong doer. But this is incorrect. The complainant alleges in her bill that Charles Racey, the late husband of the witness, entered into possession under the mortgage, which the bill admits to be a valid and subsisting security: and the complainant prays the rents and profits, when ascertained, may be deducted from the amount due on the mortgage. The complainant claims no balance, but asks that she may redeem, on payment of what, (if any thing,) may be due after deducting the rents and profits. The witness, Mrs. Racey, can not, therefore, be made responsible by a decree in this suit for the payment of the rents and profits. If the complainant should fail in this suit, the land belongs to the heirs at law of her husband, and Mrs. Racey is neither a gainer nor a loser. If the complainant succeeds in obtaining a decree for redemption, she may be a gainer, because she may be entitled to her

distributive share of the balance due on the mortgage; but having no interest in the land, she can not be a loser. If she has any interest in the event of the suit, it is an interest in favor of the complainant's recovery, which does not disqualify her as a witness for the defendants. Her contingent liability for costs is not sufficient to exclude her as a witness for her codefendants.

As to her credibility, there is nothing improbable in the facts which she relates. The property being mortgaged to Charles Racey for its full value, and more than its value, the equity of redemption was worth nothing; and it was the interest of both parties that the title should be vested in the mortgagee with as little expense as possible. Dobson and Racey were on friendly terms, and Dobson owed Racey several hundred dollars over and above the amount due on the mortgage, and was unable to pay any thing. The material facts to which she testifies are, that after Dobson left this state, and while he was in Darien, in Georgia, he wrote a letter to Racey in which, after stating that he should never return, he expressed a wish that the title might be vested in Racey, in any way General Bogardus should think fit or advise, to save the expense of a foreclosure. And that after the conveyance of the equity of redemption and release of dower had been executed to Harrison, and reconveyed by Harrison to Racey, and after Mrs. Dobson had been paid one hundred dollars for her dower right, Racey wrote to Dobson, informing him what had been done. That shortly afterwards a letter was received by Racey from Dobson, in which he declared himself perfectly satisfied with the arrangement that had been made. The conveyance by Racey, as attorney for Dobson, and by Mrs. Dobson, to Harrison, was executed in the presence of General Bogardus.

On the part of the complainant it is contended that Mrs. Racey's testimony is effectually discredited by her answer; and it is true that in her answer she makes no mention of these letters, although she was called on by the bill to set

Dobson *against* Racey.

forth all correspondence of any description relating to the affairs between Dobson and her late husband; and she further stated in her answer that she had no knowledge of any papers relating to transactions between those parties. But when her answer was put in, she may not have been aware of the materiality of the letters; and the omission to state them, although it may excite doubt as to her truth, does not seem to justify a belief that what she narrates in relation to them is a mere fabrication. We must take the testimony as true, or reject it as perjury. All the circumstances considered, I am not prepared to adopt the latter alternative.

She is contradicted by Mrs. Marks, who was the widow of Dobson, in regard to the admission by the latter, of the receipt of one hundred dollars as a compensation for her right of dower. But Mrs. Marks denies not only the receipt of the money, but the execution of her release; and the latter was proved before a master in chancery by the testimony of General Bogardus, the subscribing witness, and by the acknowledgment of Mrs. Marks, then Mrs. Dobson, before the master in chancery. As between these two witnesses where they contradict each other, I think no one who reads the testimony and looks at the documentary evidence can hesitate in giving credit to Mrs. Racey, and although the case may admit of doubt, the safer and better conclusion is, that the arrangement to vest the title in Charles Racey was made with the consent and approbation both of Mrs. Dobson and her husband.

The decree of the court below ought, therefore, to be affirmed.

Decree affirmed